116-0002, Carl Crittenden v. City of Chicago Good morning, Your Honor. Good morning, Mr. Newman. I bring you another case involving a wage differential award. That's your specialty this weekend. I've gone through this more than I care to, Your Honor. It's an AD-1 award, a wage differential, AD of the Workers' Compensation Act. In this case, my client, Mr. Crittenden, was what we call a garbage man for the City of Chicago. He suffered a back surgery in the form of a fusion, which following would not allow him to return to his, as we say, the usual or customary occupation. Before the arbitrator, we presented evidence of what Mr. Crittenden would be able to make by way of a professional opinion from Mr. Steve Blumenthal, that he was able to make between $825,000 and $1378,000 an hour. The City put Julie Bozan in opposition. She didn't disagree with those numbers. I would consider that his undisputed testimony. The arbitrator proceeded to enter an award using the estimate of $825,000 to $1378,000 an hour and doing as AD-1 requests or provides, averaged it to $11 an hour, and entered an award of $81 and there's some change per week. The City, on review, says Mr. Crittenden was not entitled to a wage differential at all. That was never addressed in the Commission's decision and opinion on review. What they did do is, and before touching on the Commission's, I have to say, my client certainly gave everybody enough reason to criticize him and what efforts he may have made to obtain it yet. With that, and that was the crux of the City's argument, why he was not entitled to a wage differential at all. The Commission enters a decision that says, correctly starts with, they find my client entitled to a wage differential award and that is because he was unable to go back to his usual and customary employment. That is not an issue, but that is the first prod of an AD-1 award. The Commission then goes on to say, pursuant to AD-1, he is entitled to two-thirds of the difference from what he would make if he were still in his occupation, and they correctly state, and the average amount he is earning or is able to earn in suitable employment after the accident. That's the correct statement of the law. It is the second prod of AD-1, except the Commission. After looking at all the criticism, my client says, this Commission finds it is more reasonable in this case to determine that he's capable of making $13.78 an hour, the maximum of the estimate or range that was presented in the evidence. I've said before you in my brief that this is contrary to law because the law says you take the average amount, not a specific amount. I might have to say you can do that if there's evidence of a specific amount, but the evidence is not a specific amount. The evidence is a range which is normal and which is provided for in AD-1 where they say the average amount one might earn. Well, what did your expert Blumenthal say? What did he set the median or the average salary? What did he say? $8.25 an hour to $13.78 an hour. Okay. Are you disputing those figures? No, I'm not. Those are the figures we put on. That's our evidence. What I'm here to say is that there's no dispute as to that evidence or those numbers. The city put on Julie Bowes. She didn't disagree with those numbers. To make some comment, it might be a little bit high. Mr. Blumenthal was the expert that you submitted on behalf of the claimant? I'm sorry. Mr. Blumenthal was the expert submitted on behalf of the claimant? Yes. So you recognize the figures, and where again did the commission go wrong in utilizing the figures provided by your expert? Where did they go wrong? Yeah. I don't think that they have – well, I think they've got to follow the law like all of us. Yes. The law says the average amount. That's from the legal side. They didn't do that here. In my opinion, this decision is meant to be punitive. And again, I'm going to say, my client's not a real nice guy here. He didn't – he got my wrath as much as he's getting it from everybody else. But that doesn't deny his right to what he's entitled to. And it's a determination based on the average amount he's able to earn under the law. Under a factual examination of the record here, you have to have some proof that 1378 is what he can make, is all he can make. And there's nothing in the analysis here, there's nothing that was presented by the city that would say that's the amount. So what are you suggesting the average amount he would have been able to earn should have been? According to Steve Blumenthal, according to the evidence, the average amount is – I've come up with $11.01. The arbitrator came up with $11.00. What was the range that Blumenthal gave you? $8.25 an hour to 1378 an hour, Your Honor. Okay, but that was – and he characterized that as a range. Am I correct? Yes, that's the way they always express it. How do you calculate the average amount? How do you do that? Pardon me? How do you calculate the average amount that he could earn? How do you do that? Take two figures, add them together, divide by two. That's not necessarily the average amount. If 15 jobs were looked at and 10 of the jobs paid $8.50 an hour and only five of the jobs paid $13.00 an hour, the average would not be the difference between our $8.25 and 1375 and divide it by two. It depends on how many jobs paid how much money. And then you're right. The statute does say it has to be an average amount. In this particular case, $13.00 is not the average of anything. But the question that I have is what is the average amount? Can I help with that because you have a little bit of time? I used to teach statistics. Average is a measure of central tendency, and there are three accepted measures of central tendency, mode, medium, and mathematical average. Okay? They only come up with the same figure if you have a normal distribution curve. And so, but to Justice Hoffman's question, average is used in each one of those three measures of average. So, median, 50% are above that figure, 50% are below. Mode is the most frequently occurring in the range. And then average is a mathematical average, which is high minus low divided by two. Your formula would be correct. Your formula would be 100% correct if the evidence were only two jobs. One paid $8.25 and one paid $13.78. But that's not what we have in this case. We have a range of $8.25 to $13.78. Adding them together and dividing by two isn't the average of anything. It's the middle of the range. But that doesn't mean it's the average. May I respond to that, please? Yeah. Because I think you're absolutely correct. There are two ways to determine what someone is able to make, able to earn, as the statute says. One is, and you gave it to me in my first lobotomy case, the average amount divided by two and said that expert testimony provides the evidence. That's what we have here. But the other way is from a job search. No, I think what you're saying is correct, but I think it's more directed to a job search. If somebody comes in and says I went here and I went here and I went this is this much and this is this much. I understand what you're saying. We've got a different issue. But if the expert only says the range that he can earn is from $8.25 to $13.78, that testimony does not create an average. Unless, of course, he says I determined this because I found two jobs that he's suitable for. One pays $8.25 and the other pays $13.78. But if the only thing he says is the range is $8.25 to $13.78, he's not talked about an average. But in any case, however you do this, $13.78 is not the average of anything in this case. So, I mean, you know, we've got to do something with that. But I hope so. Yeah, but the record doesn't give us a figure unless we go and say average is one of these modes of central tendency. And you have to have the data for it. I would say you really have to look at the full report. This is really the conclusionary part of it. I can't remember. It's probably about an eight-page report. And I have to take some pride in the fact that I did a cross-examination of one of these people in another case recently. It took two and a half hours of cross-examination. But I got to the bottom of how these guys do their work. And a lot of it comes from labor statistics in the state of Illinois and computer programs and software. So if you look at Blumenthal's complete report, you'll probably find about four or five different job categories that he says this particular individual might look for work. The areas where maybe he has some interest, the areas where he's likely to be hired. And then they go to a different one to determine what the dollar amounts are that those particular jobs might pay for a first hire, a new person. And in terms of their report, they then take the lowest to the highest. And that's how they come up with the final conclusion that they do. So the report itself is more than just two figures. Wasn't the 1378 the highest of the possible types of employment? Yes, it was. And wasn't that a bus driver? I don't recall a specific occupation, Your Honor. I'm sorry. All right. So in essence, you're saying the argument is simple. The issue is simple. It's the formula to apply to get to where you want to be that has to be looked into. That is correct. Okay. We'll have to look at Blumenthal's report on the issue case. All right. Okay. Thank you, Your Honor. Thank you, Counselor. I have time to reply. Counselor, you may respond. May it please the Court. Carl Newman on behalf of the Apollee, the City of Chicago. Before I begin this morning, I'd just like to briefly call the Court's attention to a letter that we filed earlier this week. It notes that there's a misstatement of the wage of a security guard on two pages. We all received that letter prior to oral. Thank you. Thank you. This morning I will explain first that the Commission's determination that Mr. Crittenden was able to earn $13.78 per hour was not against the manifest weight of the evidence as it was based on evidence taken from Mr. Crittenden's own expert report. What evidence was it? So the expert report from Mr. Blumenthal lists six jobs that are designed to be representative. And to go to Justice Moore's question, yes, that top-earning job is that bus driver job, not the security guard job, and that's what the correction is about. So are you suggesting that the Court should rely upon the security guard job or the bus driver job? My suggestion is that it doesn't need to rely on any of the specific jobs that are named. They're meant to be representative examples, not an exhaustive list. It's not an opinion that these are the only six jobs you could get. And actually, to go back to Justice Hoffman's point, it is actually an average amount. The $13.78 is the median amount that a bus driver could expect to earn in the state of Illinois according to IDES figures. So it is actually itself an average figure. The point is this. Mr. Crittenden is the one who- And what do you understand median to be statistically? Median, of course, is the middle of the data set, and so it is not actually the mathematical average. And so having taken a top statistics class, I understand that they are different. So you're suggesting that the $13.78 is justified because this report, when we look at it, is going to tell us that he's suitable for work as a bus driver, and the average amount of money that a bus driver makes in the state of Illinois is $13.78 an hour. That's your position. Yes. And so we say that Mr. Crittenden offered this evidence, and the opinion is solely a range. It is this $8.25 to $13.78 an hour. And this Court's decisions have always said that the determination of the earning capacity is a factual question that's reviewed as against the manifest weight of the evidence. That's not the issue here. The issue here is how do you compute it? We know it's factual. The question is how is it computed? Right. And so the statute says the average amount he's able to earn in some suitable employment or business after the accident. And so they give this example. His expert offers this example of a job that he could, suitable employment, and the average amount he's able to earn in that job. The other evidence in the record which actually could support that determination by the commission, and the commission just says we reviewed all the evidence and we find this is the right number, includes the fact that Blumenthal's report has some of his work history, and that includes that he was earning $11 an hour at a part-time job at Target from about 1997 to 2003 and $12 an hour for the six months prior to the accident at Shriners Hospital. And we think that that work history data tends to suggest that if the opinion is just here's a range, because my opinion is here's a range that represents his earning capacity, that if you look at this other data about his job history, it would support an inference by the commission to go towards the higher end of the range. Okay. Let's talk about that lower end of that range. What does that represent? So the 825, and this is actually sort of a peculiarity of the report, represents minimum wage at the time the opinion was written. So he's actually using job data from a cashier job from IDES, which I believe the entry-level wage was $8.13 per hour, and that's actually below minimum wage as of January 1, 2010. The report's August 2, 2010. So the range is calculated by saying entry-level wage is minimum wage, $8.25 per hour, and then the sixth job he lists is this bus driver job with $13.78. And the average salary of the bus driver is $13.78. The median salary. Let's go back. You kind of ran that too fast for me. Sorry. Okay. So you're typing a minimum wage at the bottom. Yes. So that's not an average wage really at all. I know. No, a minimum wage is a statutory arbitrary wage required by classified employers to pay. Absolutely. Okay. It doesn't matter whether it's McDonald's or a Quick Loop shop. Absolutely. Okay? Yes. As long as they're covered. So that's a wage minimum. And then you said there's six something else? There are six total jobs listed in Blumenthal's report. So the lowest paying is cashier. The highest paying is bus driver. The lowest paying job using the IDES data is actually a starting wage $8.13 an hour. Which is minimum. Which was less than minimum at the time the report was prepared because he's using third quarter 2009 IDES data. I would suggest that he has to in his report use a minimum wage. Which is exactly what he did. Whatever it may be. Which is exactly what he did. Right. But then again, using the minimum wage at the bottom of that range, that's not representing an average wage in any employment. It's representing the minimum wage. It's an entry level wage. And this particular claimant, Mr. Crittenden, is someone who is going to earn or is capable of earning, there's evidence to suggest he's capable of earning substantially more than the minimum wage. In fact, one of the other jobs that's listed is a retail position. And it says that in 2009, median wage in Illinois for retail workers was a little under $10 an hour. Well, this person, Mr. Crittenden, was in fact making $11 an hour in a job at Target in 2003, six years earlier. So he's someone who's capable of earning above the median for that occupation in the state. The argument that Mr. Crittenden has presented, to go back again to something that Justice Hoffman said, is just the average of those two numbers. And so the only way that taking the low number and the high number, adding them together and dividing by two, the only way that that represents the average of anything is if those are the only two numbers in the set. And so clearly that's not what's been required. Now, one of the cases that we cite in our brief, and really the only case we cite in this section of our argument, What does the statute say? The statute says the average amount he is able to earn in some suitable employment or business after the accident. And so if we're going to take... So your analytic matrix is determine suitable employment. Yes. That's your first point. Yes. And then the statute requires the average of that suitable employment. Yes. Is that what you're saying? So, yes. I don't think it requires that we figure out every job he could possibly get within his restriction and then take the average of all of his wages. No, you have the commission determine what suitable employment he is capable of, pick it out, and then you have to take the average wage at that suitable employment. In this particular case, they just pick the highest one. Which is itself an average wage. But their decision did not refer to the bus driving position, did it? It does not explicitly. In fact, the commission's decision is fairly sparse on this. It just says we reviewed all the evidence. Yes. Well, didn't they have to make a finding of that? They did make a finding. They did make a finding. Mr. Spangoli suggests that the award is punitive. And what the commission says is, The commission agrees that the petitioner has clearly shown entitlement to a wage differential. However, his lack of effort in obtaining alternate suitable employment leads us to determine that he is capable of earning the highest amount that Mr. Blumenthal opined he was capable of earning, 13.78 per hour. Mr. Spangoli makes the argument that that's a punitive award. But that is not a finding of his ability to work as a bus driver and then taking the average wage of a bus driver. Well, that was just my question in all due respect, was what finding did they make as to suitable employment? The only thing that's in the decision is that they've reviewed all of the evidence and determined that 13.78 is the appropriate number. They didn't make a specific finding. They didn't make a specific finding. But you agreed, I believe, that the first point of analysis is a finding or determination of what suitable employment is. I don't actually believe that that finding has been required in this Court's decisions before on this topic. But you agreed with a lot. In terms of the analysis of the statute? Yes. I mean the... That it seemed to be that's what the statute would require. I think... It's okay to agree. The question as to there has to be some suitable employment, I don't actually believe that it needs to be specifically identified because these reports typically only list a small number of jobs that are designed to be representative and not exhaustive. So the Commission is not required to find this is the job that he's getting. The opinion that's offered is an opinion on earning capacity and not a job placement opinion really. You know, these six examples are in there in large part because they're in response to Mr. Crittenden's own expressed interest during the course of his interview with Mr. Blumenthal. And he essentially said these are the kinds of jobs that I would want and that's why they're used. The... This court's decision in... The analysis that I think is being discussed of taking all the jobs and averaging the wage data together, I find no precedent that supports that. And this court's decision in Copperwell Tubing, which is I believe the only case that we cite in the section of our argument, the opinion that was offered was 8 to 12 and the claimant had in fact had a job where he earned 8 for about two months. And then the question was the Commission used 8, the employer wanted to use 12. Is the determination that it's 8 against the manifest weight of the evidence? And the answer of this court is no. It's a factual determination. There was a range. There was some other evidence to suggest the $8 figure. And that's the end of the analysis. That's why we should uphold the Commission. I'm sorry. And that's why in essence we should uphold the Commission. Should have... I'm sorry. I'm not... You are arguing succinctly we should uphold the Commission's decision. Why, again? Because it's within the range and that's what was offered. There was other evidence. It's a manifest weight determination. There is evidence in the record to support using a higher number from the range. What was the evidence? The evidence that he was able to earn... There's a data point out there that represents median in an occupation that there's, in the opinion of Blumenthal, he was suitable for? Yes. Or is that inferential? That evidence is in the record. And then the inference to be drawn from his work history is that looking at this range, and this is all... And, again, this is Mr. Crickenden's burden to prove his impaired earning capacity, and this is the only evidence he's offered to do so. Looking at the range that his expert opined, there's reasons why the Commission could infer that the higher end of the range more accurately represents his earning capacity as of the date of hearing. Just kind of hypothetically, what would happen if the record is insufficient to establish a wage differential in terms of the evidence? If the evidence was... That's under the statute. If the evidence was insufficient, and this is actually what we petitioned for review of the arbitrator's decision to the Commission, we said he had failed to meet his burden to establish a wage differential award, which I believe, go back, for redetermination. So it would be a remand. We have not appealed the Commission's decision, and so... Oh, and just one final point about something that my colleague mentioned this morning. As I read the arbitrator's decision, the arbitrator was not averaging the range to come up with the $11 an hour figure. I believe she was actually using it because he had earned $11 per hour at the target job from when he left in 2003. As I read her decision, she said there's an opinion as to a range. The report includes his work history. He earned $11 an hour at a job before. Therefore, the arbitrator found $11 per hour was a reasonable figure to use. And unless there are any further questions, we'll ask that the Commission's decision be affirmed. Thank you, counsel. Counsel may reply. I would point out again that the city before the Commission said Mr. Grittenden wasn't entitled to a wage differential award at all because of his conduct or misconduct. Obviously, they don't bring that along with this case. And they really don't tell you why the Commission comes to 1378 from any logical standpoint, any case law, or any factual standpoint. And I noticed in reading their brief that they really don't make an effort to justify how the Commission came to that conclusion. The only thing that they have in there that I do find of some interest and may be a precursor of future cases you may see, and again in response to Justice Hoffman's question, was they cite the case of Cocker Well Tubing, which I think Justice Hoffman wrote that decision, in which there was a vocational opinion that the person could make $8 to $12 an hour and end up getting a job at $8 an hour. And then I believe the case went on to say, but he could have made more. And I was waiting for counsel to bring that case up. But where is the difference? Obviously, the argument was, well, it was 8 to 12. He got a job at 8. We should really be averaging. I presume that was the argument. The difference is, he got a job. So that he goes under that part of the act that says the average amount he is earning, as opposed to that part that says the average amount he is able to earn. And that distinguishes those two cases.  Remember, the issue before you today is the commission's modification of the arbitrator's award proper, according to law or according to fact. And if not, then without determining some other way of doing the averaging or mediating or balancing, the real question is, is the arbitrator's decision correct according to fact and law? I say it is. I've asked you to reverse the circuit court, which confirms the commission, and reinstate the arbitrator's decision in this case. With that, I thank you, Your Honors, for your attention. Thank you, counsel, both, for your arguments in this matter. If we'll take that as an advisement, written disposition shall issue.